**SIGNED this 9th day of September, 2026**

Nicholas W. Whittenburg
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | |
|---|---|
| **In re** | |
| **Teresa Gail Baker** | **No. 1:15-10706-NWW**<br>**Chapter 7** |
| **Debtor** | |
| **Douglas R. Johnson, Trustee** | |
| **Plaintiff** | |
| **v.** | **Adv. No. 1:26-ap-01005-NWW** |
| **DeKalb County, Georgia** | |
| **Defendant** | |

**M E M O R A N D U M**

The plaintiff, as chapter 7 trustee, filed a complaint initiating this adversary proceeding on March 16, 2026, seeking relief on a single count—inverse condemnation

against the defendant, DeKalb County, Georgia. The plaintiff alleges that the defendant's longstanding and continued use of property of the estate as a landfill, without remediation, constitutes a taking under the Fifth Amendment to the United States Constitution. The plaintiff argues that the taking and the defendant's unwillingness to allow a nonconforming lot division render the property unmarketable when it otherwise would be worth millions of dollars.

The defendant answered the complaint, denying the plaintiff's allegations and raising twenty-five affirmative defenses. The defendant preserved objections to this court's subject matter jurisdiction over this proceeding, including whether the plaintiff's claim is core or non-core.

The court held a scheduling conference on June 3, 2026, during which the defendant raised its jurisdictional concerns. Because jurisdiction and whether this proceeding is classified as core or non-core are threshold issues, the court ordered the parties to file briefs on those issues. *See* 28 U.S.C. § 157(b)(3).

With briefing now submitted, resolving the defendant's challenge to jurisdiction requires answering the following legal questions:

1) Does the court have subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b)?
2) Is this a core or non-core proceeding pursuant to 28 U.S.C. § 157(b)?
3) If this is a core proceeding, does Article III preclude the court from entering final judgment?

Having considered the parties' briefs, the court holds that it has subject matter jurisdiction over this adversary proceeding, that this is a core proceeding, and that Article III does not preclude the court from entering final judgment.

## I. Background

On February 20, 2015, Teresa Gail Baker filed a petition for relief under chapter 13 of the Bankruptcy Code. The day before a hearing on objections to confirmation of the debtor's proposed plan of reorganization, she converted the case voluntarily to one under chapter 7.

On April 30, 2015, a chapter 7 trustee was appointed. Although over eleven years have passed since then, the debtor's bankruptcy case remains open due to unusual circumstances in administering part of the bankruptcy estate.

The debtor's bankruptcy estate includes the debtor's one-twelfth interest (either directly or indirectly as a member of Carmichael Concepts, LLC) in five unimproved real property lots located in DeKalb County, Georgia. Four of the five lots are contiguous, totaling 14.62 acres, with the fifth lot being separated from the others by a railroad. Those four connected lots are at the center of this litigation.

Only one of the four lots has access to a public road. The other three lots are landlocked. Beginning in 1955, the debtor's grandfather leased land to the defendant for use as a landfill. The plaintiff contends that the entire landfill area consisting of approximately 11 acres, is spread out over three of the four contiguous lots, including a portion of the lot that provides access to a road.

In 2016, the chapter 7 trustee commenced a separate adversary proceeding seeking authority under 11 U.S.C. § 363(h) to sell both the debtor's one-twelfth interest

and also the co-owners' eleven-twelfths interest in the DeKalb County lots. 1:16-ap-01029-NWW, ECF No. 1. Eight years later (on January 15, 2024), the trustee filed a settlement motion in the debtor's bankruptcy case, seeking to approve a settlement between the parties to that adversary proceeding that would allow the trustee to market for sale the four lots.

Following responsive pleadings and a hearing, the court approved the settlement agreement. 1:15-bk-10706-NWW, ECF No. 189 (March 21, 2024 settlement order). That settlement order authorizes the trustee to market for sale the four connected lots free of the eleven-twelfths interest of the co-owners pursuant to 11 U.S.C. § 363(h). *Id.* at 7–8. The settlement order also states that "[t]he [t]rustee *shall* negotiate with the Georgia Department of Natural Resources, Environmental Protection Division, and/or DeKalb County, and/or any other governmental agency as he sees fit to resolve any issues (including, without limitation, subdivision, access and/or sale) regarding the landfill" located on the property. *Id.* at 8 (*emphasis added*).

Since 2016, the plaintiff has attempted to market and sell the properties he maintains are prime for development, absent the landfill. After years of speaking with developers and negotiating with the defendant, the plaintiff identified two ways to achieve a sale:

1) Either the defendant remediates the landfill portion of the properties, or
2) The defendant grants a subdivision variance that removes the landfill from the properties to be sold.

The defendant's subdivision regulations require that parcels must front eighty-five feet on a public road—something made impossible by a landfill blocking the only

access to a road. The complaint alleges that the defendant's refusal to remediate the landfill coupled with its refusal to grant a subdivision variance amounts to a taking without just compensation because the defendant's actions and inactions have made it impossible to develop and market the debtor's interest in the properties, the bankruptcy estate's most valuable asset. The plaintiff seeks just compensation for the defendant's purported taking of the properties.

## II. Legal Analysis

The bankruptcy court's jurisdiction "is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Section 1334(b) of title 28 gives district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." District courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District Court for the Eastern District of Tennessee made such a referral of jurisdiction to this bankruptcy court. E.D. Tenn. S.O. July 1984.

The court has a duty to ensure that it has subject matter jurisdiction over each proceeding and, if it does, then to classify each one as "core" or "non-core." 28 U.S.C. §§ 157(b)(3), 1334(b).[1] Because Sections 157(b) and 1334(b) contain similar language, courts should be wary of conflating their analysis. Additionally, the court's jurisdiction may also be limited by the Supreme Court's application of Article III of the Constitution

[1] Only after finding that section 1334(b) jurisdiction exists will the court determine whether a matter is a core or non-core proceeding under 28 U.S.C. § 157. *See In re E.C. Morris Corp.*, 523 B.R. 77, 81 n.4 (B.A.P. 6th Cir. 2014) (quoting *Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 713 (Bankr. S.D. Ohio 2012)) ("Section 157 does not create jurisdiction when it does not exist under § 1334.").

to bankruptcy jurisdiction, recognizing that there are instances when a bankruptcy court may have statutory authority to render final judgment under section 157(b) while lacking constitutional authority to do so under Article III. *See Stern v. Marshall*, 564 U.S. 462 (2011).

With each of those jurisdictional parameters in play, the court will employ the following step-by-step framework to determine the scope of this court's authority to hear and determine this adversary proceeding:

A) Determine whether subject matter jurisdiction exists pursuant to 28 U.S.C. § 1334(b).

B) If subject matter jurisdiction exists, analyze whether the proceeding is "core" or "non-core" pursuant to 28 U.S.C. § 157(b).

C) If the proceeding is "core," determine whether exercising statutory authority over it violates Article III of the Constitution.

**A. Subject Matter Jurisdiction Under § 1334(b)**

When interpreting 28 U.S.C. § 1334(b), the Sixth Circuit has stated repeatedly that the bankruptcy court's jurisdiction "includes three categories: (1) proceedings 'arising under title 11'; (2) proceedings 'arising in' a case under title 11; and (3) proceedings 'related to' a case under title 11." *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.*), 761 F. App'x 553, 559 (6th Cir. 2019) (citing *Mich. Emp't. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1140–41 (6th Cir. 1991)).

The third category—“related to” jurisdiction—is the most expansive, and thus, a bankruptcy court need only determine that the matter is related to the bankruptcy to have subject matter jurisdiction under section 1334(b). *Id.* at 559–60 (citations omitted); *see also Celotex*, 514 U.S. at 308 (“[T]he 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate.”). To make that determination, the Sixth Circuit applies the “conceivable effect” test, noting that “a civil proceeding is related to bankruptcy . . . [when] the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Giese*, 761 F. App’x at 559–60 (citation omitted); *see also Vacation Village, Inc. v. Clark County, Nev.*, 497 F.3d 902, 911–12 (9th Cir. 2007) (“Here, the [chapter 11 debtors’] inverse condemnation suit falls squarely within the ‘first type of “related to” proceeding’ described in *Celotex* . . . and is thus ‘related to’ the bankruptcy within the meaning of § 1334(b) without further scrutiny.”).

This court easily finds that it has subject matter jurisdiction under section 1334(b). The plaintiff's action stems from his charge to “collect and reduce to money the property of the estate” and from his authority to market for sale the properties as set forth in the order approving his compromise with the nondebtor co-owners of the properties and pursuant to section 363(h) of the Bankruptcy Code. 11 U.S.C. § 704(a)(1). If the plaintiff is successful in this adversary proceeding, the bankruptcy estate will receive compensation for the defendant's taking of property. Because of the unique circumstances encompassing the properties, arguably the estate cannot be

administered without this adversary proceeding. Thus, the outcome of this adversary proceeding certainly has a conceivable effect on the estate's administration.

The court could end its subject matter jurisdiction analysis there, but another provision of section 1334 bolsters the court's jurisdiction. "Subsection (e) of § 1334 further refines the district courts' and, derivatively, bankruptcy courts' jurisdiction in bankruptcy matters." *Harker v. Wells Fargo Bank, NA (In re Krause)*, 414 B.R. 243, 254 (Bankr. S.D. Ohio 2009) (citing *Noletto v. Nationsbanc Mortg. Corp. (In re Noletto)*, 244 B.R. 845, 852 (Bankr. S.D. Ala. 2000)). That subsection states: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). With that subsection, Congress afforded exclusive *in rem* jurisdiction over property of the estate to the district in which the debtor's bankruptcy case is pending, and consequently, to the bankruptcy court which has the referral of the bankruptcy case.

Section 1334(e) establishes "a fiction" that property of the bankruptcy estate is located in the district where the bankruptcy case was filed, and all rights with respect to that property must be adjudicated in that home district. *Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon)*, 153 F.3d 991, 996 (9th Cir. 1998) (citations omitted) ("The court's exercise of 'custody' over the debtor's property, via its exercise of *in rem* jurisdiction, essentially creates a fiction that the property—regardless of actual location—is legally located within the jurisdictional boundaries of the district in which the court sits."). The efficacy of the bankruptcy process "depends on the existence of one

court to control assets and distribute them in accordance with the priority scheme established by the Bankruptcy Code," and section 1334(e) serves that purpose by affording exclusive authority to control and distribute property of the estate to the bankruptcy court in which the case is pending. *Noletto*, 244 B.R. at 853. Claims that "directly target 'ownership of, or rights in and to, property of the estate' . . . are . . . *in rem* claims" over which the bankruptcy court has exclusive jurisdiction. *Harker*, 414 B.R. at 256 (citation omitted). Congress enacted § 1334(e) to create a "home court" jurisdiction for *in rem* claims as compared to *in personam* claims. *See Harker*, 414 B.R. at 254; *Noletto*, 244 B.R. at 853–54.

Property of the estate is defined broadly to include all of a debtor's legal or equitable interest in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Undisputably, the debtor's interest in the properties is property of the estate. Therefore, under section 1334(e), this court has *in rem* jurisdiction over the properties. *See Porretto v. City of Galveston Park Board of Trustees*, 113 F.4th 469, 483–84 (5th Cir. 2024) (collecting cases about the court no longer having *in rem* jurisdiction when property is abandoned from the estate). While this court clearly has exclusive jurisdiction over the debtor's interest in the properties, the question becomes whether the current adversary proceeding presents an *in rem* claim over which this court is afforded exclusive jurisdiction by section 1334(e).

Here, the plaintiff's inverse condemnation claim seeks compensation for the defendant's purported taking of the debtor's interest in the properties. That the plaintiff seeks monetary relief suggests that his claim is an *in personam* claim. However, any

monetary relief is rooted in the bankruptcy estate's loss of the rights to utilize, develop, and sell the properties resulting from the defendant's alleged taking of the properties. Those are rights inuring in the properties. Logically then, this adversary proceeding, which seeks compensation from the defendant for interfering with those rights, furthers this court's exercise of *in rem* jurisdiction over property of the estate. *See Davis v. California (In re Venoco LLC)*, 998 F.3d 94, 103–10 (3d Cir. 2021), *cert. denied*, 142 S.Ct. 231 (2021) (holding that a trustee's inverse condemnation claim was brought to effectuate the bankruptcy court's *in rem* jurisdiction, to which California had waived its immunity from suit by ratifying the Bankruptcy Clause of the United States Constitution). Because the plaintiff's inverse condemnation claim directly targets rights in and to property of the estate, the claim is an *in rem* claim over which this court may exercise jurisdiction under section 1334(e).

**B. Core and Non-Core**

Having found that this court has subject matter jurisdiction, the court is now required to determine whether it has authority to enter final judgment under 28 U.S.C. § 157(b). Section 157(b)(1) authorizes bankruptcy courts to enter final orders and judgments in "all core proceedings arising under title 11, or arising in a case under title 11." If a proceeding is not a core proceeding, the bankruptcy court may nonetheless hear the proceeding but must submit proposed findings of fact and conclusions of law to the district court subject to de novo review by such court. 28 U.S.C. § 157(c)(1). Accordingly, the bankruptcy court may enter final orders and judgments only respecting core proceedings subject to traditional appellate review. 28 U.S.C. § 158(a)(1).

The defendant maintains that this adversary proceeding neither arises under the Bankruptcy Code nor arises in the debtor's bankruptcy case, which should preclude the court from classifying the matter as a core proceeding. Specifically, the defendant argues that the plaintiff's claim of inverse condemnation involving Georgia land does not invoke any substantive right created by the Bankruptcy Code and therefore does not arise under title 11. The defendant further posits that the inverse condemnation action is not an administrative matter that arises only in bankruptcy cases. Rather, the defendant argues that the suit could exist notwithstanding the filing of the debtor's bankruptcy case and be litigated by the properties' owners in state court.

The plaintiff disagrees and instead relies upon 28 U.S.C. § 157(b)(2)(A) and (O) to establish core status. Section 157(b)(2) of title 28 contains a nonexclusive list of core proceedings. Those core proceedings include "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(A) and (O). The plaintiff maintains that this adversary proceeding is a natural outgrowth of the exercise of the power afforded solely to a trustee to sell property by section 363(h) of the Bankruptcy Code. Additionally, the adversary proceeding was filed in furtherance of the trustee's duty to collect and reduce to money the property of the estate. 11 U.S.C. § 704(a)(1). Taken together, the plaintiff argues that both "arising under" and "arising in" jurisdiction exists and that the matter certainly meets the statute's definition of "core."

Because both parties cited the Sixth Circuit's ruling in *In re Wolverine Radio Co.*, the court will address its analysis here. *See Mich. Emp't. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132 (6th Cir. 1991). In *Wolverine*, the

chapter 11 debtor filed bankruptcy and, in connection with confirmation of its chapter 11 plan , sold property "free and clear" under section 363(f) of the Bankruptcy Code. 930 F.2d at 1135–36. A dispute then arose between the purchaser and the Michigan Employment Security Commission about whether the sale included the debtor's insurance experience rating (and rate). *See id.* at 1136–37. The Security Commission argued the bankruptcy court had no jurisdiction to determine the dispute between the nondebtors. *See id*. at 1137. In analyzing the form and substance of the dispute, the *Wolverine* court held that the form of the matter (a motion to enforce the confirmation order) could not exist outside of bankruptcy but then conceded that the substantive proceeding could also be characterized as a declaratory judgment, which could exist outside of the bankruptcy court. *See id.* at 1144–45. The court further admitted that though the debtor was a named party, in reality the suit was between third parties, the nondebtor purchaser, and the Security Commission—a fact that would normally result in non-core status. *See id.* at 1145. Ultimately, however, the Sixth Circuit held that because the "action involve[d] issues which arose because of a bankruptcy proceeding—the dischargeability of debts and the confirmation of a plan—and because Wolverine asserts a right based on bankruptcy law, 11 U.S.C. § 363(f), this action is a core proceeding and the bankruptcy court had jurisdiction to enter judgment on the motion." *Id*. at 1145 (citation omitted).

While the proceeding in the *Wolverine* case was not an inverse condemnation action, it shares important similarities with the present adversary proceeding. Both involve litigation rooted in an order entered by the bankruptcy court—in *Wolverine*, an

order confirming a plan of reorganization, and in the present case an order approving a compromise authorizing the trustee to market jointly owned properties. Importantly, the plaintiff's inverse condemnation proceeding, like the motion in *Wolverine*, implicates substantive rights under bankruptcy law, including the plaintiff's authority to market and sell both the debtor's and nondebtors' interests in the properties pursuant to section 363(h) of the Bankruptcy Code. Additionally, in both cases, the form and substance of the litigation is such that a hypothetical replica of the proceedings could exist in a nonbankruptcy forum absent a bankruptcy case. That is important because, as the *Wolverine* court stated, "'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Id.* at 1144 (citation omitted).

In *Wolverine*, a replica of the motion to enforce the confirmation order filed with the bankruptcy court could have been prosecuted in state court as a declaratory judgment action. Likewise, here, a replica of the plaintiff's inverse condemnation action could be prosecuted in a non-bankruptcy forum. That a replica of the plaintiff's adversary proceeding could exist suggests that the proceeding does not arise in the debtor's bankruptcy case. Nevertheless, following the Sixth Circuit's reasoning in *Wolverine*, (a) because the inverse condemnation proceeding is an extension of the plaintiff's authority expressly grounded in section 363(h) of the Bankruptcy Code and this court's order approving a compromise with the co-owners, and (b) because this court has exclusive *in rem* jurisdiction over the properties and the inverse condemnation claim presents an *in rem* claim affecting the parties rights in and to property of the estate, the court finds that this adversary proceeding is a core proceeding.

This court's conclusion is supported by at least one other bankruptcy court decision. *See Davis v. California (In re Venoco, LLC)*, 596 B.R. 480 (Bankr. D. Del. 2019), *aff'd* 610 B.R. 239 (D. Del. 2020), *aff'd* 998 F.3d 94 (3d Cir. 2021), *cert. denied*, 142 S.Ct. 231 (2021). In *Venoco*, the trustee of a liquidating trust established under the debtor's confirmed chapter 11 plan filed an inverse condemnation proceeding in the Bankruptcy Court for the District of Delaware against the State of California and one of its agencies for the taking of the debtor's refinery located in California. *Id.* at 484. Although that proceeding was an inverse condemnation action, it is distinguishable from this adversary proceeding—particularly, the State of California filed a proof of claim in the bankruptcy case, and the liquidating trustee filed the inverse condemnation action only after confirmation of a chapter 11 plan. The bankruptcy court recognized that following confirmation of a plan, a bankruptcy court's jurisdiction becomes more tenuous. *Id.* at 488 (citation omitted). Nevertheless, the bankruptcy court found the proceeding to be a core proceeding "arising in" in the bankruptcy case because, if successful, the trustee's inverse condemnation action would increase the assets available for creditors and counter the state's proof of claim. *Id.* at 489–90. On appeal, the Third Circuit accepted, without discussion, that an inverse condemnation action lodged in a bankruptcy court against a governmental agency was a core matter arising in title 11. *Davis v. California (In re Venoco LLC)*, 998 F.3d 94 (3d Cir. 2021). The Third Circuit held that the adversary proceeding furthered the bankruptcy court's exercise of

*in rem* jurisdiction over property of the estate for the purpose of liquidation and distribution to creditors. *Id.* at 106.[2]

This court finds the reasonings in both of the *Venoco* cases persuasive and applicable to the current case. Like *Venoco*, the plaintiff's inverse condemnation claim is an *in rem* claim. If successful in the prosecution of the claim, the plaintiff will be able to sell or otherwise administer the properties—as required by the Bankruptcy Code—for the benefit of creditors of the bankruptcy estate. Consequently, the court finds that the adversary proceeding is a core proceeding arising in the debtor's bankruptcy case pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### C. *Stern v. Marshall*

The court now turns to Article III of the Constitution. The defendant contends that if the court determines the adversary proceeding to be a core proceeding, then Article III as applied by the Supreme Court in *Stern v. Marshall,* prohibits this court from entering final orders or judgment respecting the plaintiff's inverse condemnation claim. 564 U.S. 462 (2011).

After evaluating *Stern*, the court finds that it does not apply here. In *Stern*, a creditor filed a proof of claim in the bankruptcy case citing damages incurred due to defamation. *Id.* at 470. The debtor filed a counterclaim for tortious interference, a claim

---

[2] In its answer and brief, the defendant asserts sovereign immunity as a defense to this court's exercise of jurisdiction over this proceeding. The court finds whatever sovereign immunity the defendant may otherwise enjoy was waived by Georgia ratifying the Bankruptcy Clause of the Constitution respecting proceedings such as the current adversary proceeding "necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 378 (2006); *see also Davis v. California (In re Venoco LLC)*, 998 F.3d 94 (3d Cir. 2021) (applying *Katz* to hold that California waived sovereign immunity by ratifying the Bankruptcy Clause of the Constitution respecting an inverse condemnation action that the court found furthered the bankruptcy court's exercise of its *in rem* jurisdiction).

the debtor had filed previously in Texas state court. *Id.* The bankruptcy court entered judgment for the debtor on her counterclaim. *Id.* The creditor appealed to the Supreme Court, which held that although the bankruptcy court had statutory authority to enter a final judgment on the counterclaim, it lacked constitutional authority to do so. *Id.* at 503. The state law counterclaim in *Stern* had "factual underpinnings of which were entirely separate from the bankruptcy proceeding." *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, 761 F. App'x 553, 562 (6th Cir. 2019).

Unlike *Stern*, this proceeding does not involve a proof of claim or a counterclaim against a creditor. Rather, the debtor's bankruptcy case remains open and the adversary proceeding was filed because the properties have not been sold and are purportedly unmarketable because of the defendant's actions and inactions. The bankruptcy case cannot conclude until the debtor’s interest in the properties is sold or abandoned. The factual underpinnings of this adversary proceeding are *not* “entirely separate” from the underlying bankruptcy. Rather, they stem directly from the bankruptcy itself and, in particular, the plaintiff's duty to collect and liquidate property of the estate and his authority to sell jointly owned property. 11 U.S.C. §§ 363(h) & 704(a)(1).

This adversary proceeding is part of the plaintiff's efforts to liquidate property of the estate for the benefit of creditors. The bankruptcy court’s statutory authority to enter final judgment does not come from 28 U.S.C. § 157(b)(2)(C) as in *Stern*. Instead, the court's authority arises in 28 U.S.C. § 157(b)(2)(A) and (O). Moreover, as discussed, the plaintiff's inverse condemnation claim is an *in rem* claim over which this court has jurisdiction. Therefore, although nonbankruptcy law is implicated (something that

frequently occurs in bankruptcy courts), the court holds that it is not precluded by Article III from entering final judgment in this adversary proceeding.[3]

## III. Conclusion

For the reasons stated in this opinion, the court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), in addition to *in rem* jurisdiction pursuant to 11 U.S.C. § 1334(e). Having subject matter jurisdiction, the court finds that the adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The court further concludes that Article III of the Constitution does not preclude the court from hearing the case. Finally, the court holds that the defendant does not enjoy sovereign immunity in this adversary proceeding. By separate orders, the court will enter a ruling consistent with this memorandum opinion and will schedule a conference to set the adversary proceeding for trial.

# # #

[3] The defendant suggests that abstention may be appropriate in this case. The defendant's memorandum did not fully brief the argument, nor was it required to, because the court requested briefs only on subject matter jurisdiction and whether this proceeding should be classified as “core or “non-core.” Because the court’s ruling is limited, it does not address abstention at this time.